UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| KENNETH T. COURTEAU and<br>CHERYL A. COURTEAU<br>    Plaintiffs,<br><br>v.<br><br>TEACHERS INSURANCE COMPANY<br>    Defendant. | No. 3:16-cv-580 (MPS) |

**RULING ON MOTION TO DISMISS**

Plaintiffs Kenneth Courteau and Cheryl Courteau (the "Courteaus") filed this action against their homeowner's insurance provider, Teachers Insurance Company ("Teachers"), for failure to pay for damages to the basement walls of their home caused by cracking concrete. (ECF No. 18.) The Courteaus bring claims of breach of contract (Count One), breach of the implied covenant of good faith and fair dealing (Count Two), and unfair and deceptive practices in violation of the Connecticut Unfair Insurance Practices Act, Conn. Gen. Stat. § 38a–816 *et seq.* ("CUIPA") and the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42–110a *et seq.* ("CUTPA") (Count Three). Teachers has moved to dismiss Counts Two and Three for failure to state claims on which relief can be granted. (ECF No. 24.) For the reasons set forth below, the motion is GRANTED as to Count Three and DENIED as to Count Two.

**I.    Background**

According to the allegations in the first amended complaint, Teachers has insured the Courteaus' home in Somers, Connecticut since 2006. (ECF No. 18 ¶¶ 3-4.) The Courteaus have always timely and satisfactorily paid their insurance premiums. (*Id.* ¶ 5.)

1

In October of 2015, the Courteaus discovered that the basement walls of their home had "a series of horizontal and vertical cracks throughout." (*Id.* ¶ 6.) Upon investigation, the Courteaus learned that a chemical compound in the concrete was oxidizing and expanding, "breaking the bonds of the concrete internally" and causing "pattern cracking." (*Id.* ¶¶ 7-9.) They also learned that the concrete was mostly likely supplied by the J.J. Mottes Concrete Company, which manufactured concrete for certain homes in the late 1980s and early 1990s. (*Id.* ¶¶ 8-9.) According to the Courteaus, it is only a matter of time before the basement walls fall in, and the entire home falls into the basement. (*Id.* ¶¶ 12-13.) The cost of repair is expected to be at least $250,000. (*Id.* ¶ 20.)

On October 19, 2015, the Courteaus notified Teachers of the problem, and on October 26, 2015, Teachers denied their claim for coverage. (*Id.* ¶¶ 14-16.) In its denial letter, Teachers stated: "Or [sic] investigation revealed the damage was caused by cracking in the foundation. We have reviewed your homeowner's policy and unfortunately coverage is excluded for this cause of loss." (ECF No. 18-2 at 2.) The Courteaus' Homeowners Policy covered:

> direct physical loss to covered property involving the collapse of a building or part of a building if the collapse was caused only by one or more of the following… 3) decay, but only if no 'insured' knew of or could reasonably be expected to suspect the presence of such decay prior to the collapse… 6) the use of defective materials or methods in construction or repair if the collapse occurs during the course of construction or repair.

(ECF No. 18-1 at 13-14.) However, it did not cover: "loss caused by the settling, cracking, shrinking, bulging, or expanding of: a) bulkheads; b) ceilings; c) floors; d) footings; e) foundations; f) patios; g) paved areas; h) roofs; or i) walls." (*Id.* at 23.) Teachers cited this latter provision in its denial letter. (ECF No. 18-2 at 2-3.)

According to the Courteaus, Teachers participates in the American Association of Insurance Services, Inc. ("AAIS"), an organization aimed at collecting data about insurance claims

and drafting policy provisions. (*Id.* ¶¶ 33-34.) Through participation in AAIS, Teachers had knowledge of many claims in northeastern Connecticut due to similar concrete decay, the strategies other insurers had used to deny claims, and cases such as *Bacewicz v. NGM Ins. Co.*, 2010 WL 3023882 (D. Conn. Aug. 2, 2010), where plaintiffs were awarded judgment against the insurer for concrete decay based on "nearly identical" policy language. (*Id.* ¶¶ 36-38.) The Courteaus allege that in the denial letter, Teachers "intentionally cited policy exclusions wholly inapplicable to the plaintiffs' claim for coverage knowing full well that the plaintiffs, like most insureds, are unsophisticated with respect to the complex language contained in insurance policies." (*Id.* ¶ 24.)

The Courteaus filed this action in state court, and Teachers removed it to this court on April 12, 2016. (ECF No. 1.) On May 2, 2016, the Courteaus filed a three-count amended complaint (ECF No. 18), and on June 13, 2016, Teachers moved to dismiss the second and third counts, for breach of the implied covenant of good faith and fair dealing and violation of CUIPA and CUPTA. (ECF No. 24.)

## II.   Legal Standard

On a motion to dismiss, I take the plaintiffs' factual allegations in the complaint "to be true and [draw] all reasonable inferences in" their favor. *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court need not accept legal conclusions as true and

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

### III. Discussion

#### A. CUIPA and CUTPA

Teachers moves to dismiss Count Three, which alleges a violation of CUIPA and CUTPA. "A plaintiff may assert a private cause of action based on a substantive violation of CUIPA through CUTPA's enforcement provision." *Karas v. Liberty Ins. Corp.*, 33 F. Supp. 3d 110, 117 (D. Conn. 2014). The CUIPA provision relevant to this case is the prohibition of "[u]nfair claim settlement practices" under Conn. Gen. Stat. § 38a-816(6). To sustain a claim of unfair settlement practices, "it is essential that the Complaint allege that the defendant engaged in more than a single unfair act; it must have engaged in the proscribed act often enough that it constitutes a general business practice." *Liston-Smith v. Csaa Fire & Cas. Ins. Co.*, 2016 WL 6246300, at *3 (D. Conn. Oct. 25, 2016). "In requiring proof that the insurer has engaged in unfair claim settlement practices with such frequency as to indicate a general business practice, the legislature has manifested a clear intent to exempt from coverage under CUIPA isolated instances of insurer misconduct." *Lees v. Middlesex Ins. Co.*, 229 Conn. 842, 849 (1994) (internal citation and quotation marks omitted). "[An insurer's] alleged improper conduct in the handling of a single insurance claim, without any evidence of misconduct by the defendant in the processing of any other claim, does not rise to the level of a 'general business practice' as required by § 38a–816(6)." *Id.* (footnote omitted). "[W]hat constitutes a 'general business practice' and the frequency with which the plaintiff needs to prove that the defendant has unfairly resolved claims are far less clear." *Belz v. Peerless Ins. Co.*, 46 F. Supp. 3d 157, 166 (D. Conn. 2014).

4

The Courteaus' CUIPA/CUTPA claim fails for the simple reason that they allege only a single unfair coverage denial: their own. They have not pointed to the use by Teachers of unfair claim settlement practices in the handling of any claims other than their own, or even alleged generally that other instances exist. At most, they allege that Teachers had knowledge of concrete decay claims denied by other insurers in northeastern Connecticut, through its participation in insurance industry group AAIS. (ECF No. 18 ¶¶ 36-40.) Plainly, "one instance of wrongful conduct, the denial of [the] claim at issue in this litigation…. is insufficient to state a claim" under CUIPA. *Kim v. State Farm Fire & Cas. Co.*, 2015 WL 6675532, at *5-6 (D. Conn. Oct. 30, 2015).[1]

By contrast, courts in this District that have sustained CUIPA/CUTPA claims have relied on allegations of multiple unfair claim denials by the insurance company defendants. *See, e.g. Liston-Smith*, 2016 WL 6246300, at *4 (citing "three additional individual matters brought against CSAA, as well as one potential class action that lists CSAA as a defendant."); *Gabriel v. Liberty Mut. Fire Ins.*, 2015 WL 5684063, at *5 (D. Conn. Sept. 28, 2015) ("[T]he Gabriels allege that Liberty Mutual and related entities have denied coverage in at least four other cases involving similar facts and identical policy language."); *Belz*, 46 F. Supp. 3d at 166 ("[T]he Belzes allege that Peerless had refused to provide similar coverage in 'at least two (2) separate instances involving other homeowners experiencing the same damage caused by the same mechanism and involving policy language identical to that in the Belzes' policy.'"); *Karas*, 33 F. Supp. 3d at 117

---

[1] The Courteaus cite two Connecticut cases that held that a bare allegation of "general business practice" adequately stated a claim under CUIPA/CUTPA. *See Jones v. Standard Fire Ins. Co.*, 2013 WL 541015, at *2 (Conn. Super. Ct. Jan. 11, 2013); *Active Ventilation Products, Inc. v. Property & Cas. Ins. Co.* of Hartford, 2009 WL 2506360, at *4-5 (Conn. Super. Ct. July 15, 2009). However, the federal pleading standard requires more than such a conclusory statement. *See Panciera v. Kemper Indep. Ins. Co.*, 2014 WL 1690387, at *5 (D. Conn. Apr. 29, 2014). (*Jones* and *Active Ventilation* "applied the Connecticut pleading standard, rather than the standard announced in *Iqbal* and *Twombly*, which requires more than the bare conclusory allegations accepted by the state courts").

("The Karases further allege that Liberty Mutual and its related entities have refused to provide coverage in at least three separate instances involving other homeowners experiencing the same damages caused by the same mechanism and involving policy language identical to that in the Karases' policy.") In one case, the court upheld a CUIPA/CUTPA claim apparently without allegations of other *specific* instances, relying instead on the defendant's participation in an insurance industry organization and the general allegation that "additional similar claims from the geographic area served by the J.J. Mottes Company likely had been submitted to and denied by Defendant." *Panciera v. Kemper Indep. Ins. Co.*, 2014 WL 1690387, at *5 (D. Conn. Apr. 29, 2014). The complaint in this case, however, lacks even a general allegation that Teachers denied any other claims.

Therefore, the Courteaus have failed to sufficiently allege a "general business practice" under CUIPA, and the motion to dismiss Count Three is GRANTED.

### B. Implied Covenant of Good Faith and Fair Dealing

Teachers also moves to dismiss Count Two, which alleges breach of the implied covenant of good faith and fair dealing. "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement. In other words, every contract carries an implied duty requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement." *De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, 269 Conn. 424, 432–33 (2004) (internal citations, quotation marks, and alterations omitted). "Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." *Id.* at 433 (citation and quotation marks omitted). In the context of an insurance policy, "violations of express duties

6

are necessary to maintain a bad faith cause of action." *Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*, 308 Conn. 760, 797 (2013).

In this case, the Courteaus allege that when Teachers denied their claim, it "acted intentionally to mislead" them by citing "policy exclusions wholly inapplicable to the plaintiffs' claim for coverage knowing full well that the plaintiffs, like most insured, are unsophisticated with respect to the complex language contained in insurance policies." (ECF No. 18 ¶¶ 24-25.) The complaint alleges that Teachers had knowledge of other insurance claims and relevant litigation, in particular the 2010 *Bacewicz* case. (*Id.* ¶¶ 21, 36-40.) In *Bacewicz*, a court in this District denied summary judgment for the defendant where the policy insured "direct physical loss to covered property involving the collapse of a building or any part of a building caused only by one or more of the following ... b. hidden decay," but with the exception that "[l]oss to ... foundation ... is not included" and "[c]ollapse does not include settling, cracking, shrinking, bulging or expansion." 2010 WL 3023882, at *3. This language is nearly identical to language in the Courteaus' Homeowner's Policy, *see* ECF No. 18-1 at 13-14 (insuring "direct physical loss to covered property involving the collapse of a building or part of a building if the collapse was caused only by one or more of the following… 3) decay, but only if no 'insured' knew of or could reasonably be expected to suspect the presence of such decay prior to the collapse") and the language invoked in Teachers' denial letter, *see* ECF No. 18-2 at 2-3 (noting exception to coverage for "loss caused by the settling, cracking, shrinking, bulging, or expanding of: … e) foundations").[2]

---

[2] Teachers' argument that the denial letter relied on an exclusion for "walls" rather than "foundations" is unconvincing, particularly when reasonable inferences are drawn in the Courteaus' favor: the letter states that "the damage was caused by cracking *in the foundation*" and "we must regretfully exclude coverage for your *foundation claim*." (ECF No. 18-2 at 2-3.)

7

Substantially similar claims of breach of the covenant of good faith and fair dealing have survived motions to dismiss in other cases in this District. For example, in *Gabriel*, the plaintiffs alleged that the defendant had "ignored state and federal case law concluding that the term 'foundation' is ambiguous, and intentionally cited inapplicable policy language to mislead the Gabriels into thinking that their claim was not covered in order to preserve Liberty Mutual's assets." 2015 WL 5684063, at *5. The court concluded that "[r]ead in the light most favorable to the Gabriels, these allegations state a claim for breach of the implied covenant of good faith and fair dealing because they give rise to a plausible inference that Liberty Mutual acted to mislead the Gabriels, or neglected to fulfill a duty to provide coverage out of a self-interested motive." *Id. See also Belz*, 46 F. Supp. 3d at 165 (denying motion to dismiss good faith and fair dealing claim in light of allegations that defendant "intentionally referred to irrelevant and misleading portions of the Policy in its letter" and "was aware that the relevant section of the Policy, Section 8, had been (and likely would be) construed in court as covering the type of cracking taking place in the Belzes' basement walls."); *Panciera*, 2014 WL 1690387, at *4 ("Plaintiffs have alleged that Defendant cited an inapplicable policy exclusion… despite several cases determining that such claims are covered by policies identical to Plaintiffs' policy…. such facts are sufficient to plausibly allege that Defendant acted in bad faith in denying Plaintiffs' claim.") Just as in these other cases, the Courteaus have plausibly alleged that Teachers acted in bad faith by ignoring relevant law and citing policy language found to be ambiguous by at least one court.

In addition, this case is distinguishable from other cases in this District where the courts dismissed good faith and fair dealing claims in a similar context. In *Liston-Smith*, the court noted that because the good faith and fair dealing claim did not reference the defendant's knowledge of other similar cases, "the court does not consider whether or not [defendant's] knowledge about

other insurance claims bears on claims that [defendant] acted in bad faith." 2016 WL 6246300, at *3, n. 1. And in *Kim*, the complaint contained no allegations regarding the defendant's knowledge of other cases interpreting the policy terms at issue. 2015 WL 6675532, at *4.

Viewed in the light most favorable to the Courteaus, the allegations state a claim for breach of the covenant of good faith and fair dealing, and the motion to dismiss Count Two is therefore DENIED.

### IV.  Conclusion

For the reasons stated above, Teachers' Motion to Dismiss is GRANTED in part and DENIED in part (ECF No. 24.). Count Three is dismissed.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:   Hartford, Connecticut
         March 17, 2017